990 So.2d 291 (2008)
Brenda Sue Sanford GRIFFIN, executrix of the estate of David Wayne Griffin
v.
UNOCAL CORPORATION et al.
1061214.
Supreme Court of Alabama.
January 25, 2008.
*292 Robert Leslie Palmer of Environmental Litigation Group, P.C., Birmingham, for appellant.
George M. Walker and Katie L. Hammett of Hand Arendall, L.L.C., Mobile, for appellees Unocal Corporation and TRMI Holdings, Inc.
Joe E. Basenberg and S. Leanna Bankester of Hand Arendall, L.L.C., Mobile, for appellee Radiator Specialty Company.
Richard Eldon Davis of Cabaniss, Johnston, Gardner, Dumas & O'Neal, LLP, Birmingham, for appellee Research Solvents & Chemicals, Inc.
Sid J. Trant, Richard H. Monk III, and Hallman B. Eady of Bradley Arant Rose & White, LLP, Birmingham, for appellee Hunt Oil Company.
PER CURIAM.
Brenda Sue Sanford Griffin, as the executrix of the estate of David Wayne Griffin, deceased, appeals from the dismissal of her claims against Unocal Corporation, Radiator Specialty Company, Hunt Oil Company, TRMI Holdings, Inc., and Research Solvents & Chemicals, Inc. (hereinafter collectively "the defendant chemical companies"), in the wrongful-death action she filed against the defendant chemical companies and others. We reverse and remand.
Because the trial court granted the defendant chemical companies' motions to dismiss without resort to any facts supplied by affidavit or other evidentiary material outside the complaint, the relevant facts are those alleged in the complaint. Ex parte Alabama Dep't of Youth Servs., 880 So.2d 393, 397 (Ala.2003). From 1973 until approximately 1993, David Wayne Griffin was employed at a tire-manufacturing facility in Tuscaloosa. During his employment there, Griffin was exposed to benzene, benzene derivatives, rubber solvents, other toxic and hazardous chemicals, formaldehyde, and other aromatic compounds. These substances were produced or distributed by the defendant chemical companies.
On September 9, 2003, approximately 10 years after he left his employment at the tire plant, Griffin was diagnosed with acute myelogenous leukemia. On February 17, 2004, Griffin died as a result of the acute myelogenous leukemia.
On February 16, 2006, Griffin's wife, Brenda, as the executrix of his estate, filed a wrongful-death action alleging that David's illness and his subsequent death had been caused by his exposure to the various chemicals during his employment at the tire-manufacturing facility. In her complaint, Brenda alleged that the defendant chemical companies were responsible for David's developing acute myelogenous leukemia and are liable under the Alabama Extended Manufacturer's Liability Doctrine.
The defendant chemical companies filed motions to dismiss and/or motions for a judgment on the pleadings, arguing, based *293 on Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), and its progeny, that Brenda's action was time-barred, because a personal-injury action based on exposure to hazardous chemicals accrues on the date of last exposure to those chemicals; consequently, an action not filed within two years of the date of last exposure is barred by the two-year statutory limitations period set forth in § 6-2-38(1), Ala.Code 1975. Thus, the defendant chemical companies argued, because the statutory limitations period for David's personal-injury claim had expired before his death, Brenda was barred as a matter of law from pursuing a wrongful-death action based on David's exposure to hazardous chemicals during his employment at the tire-manufacturing plant. See § 6-5-410(a), Ala.Code 1975.
On April 13, 2007, the trial court granted the defendant chemical companies' motions and dismissed the claims against them with prejudice. The trial court certified its judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., and Griffin appealed.
As the defendant chemical companies aptly state, the dispositive issue in this case is whether "the date of last exposure rule [is] still the law in Alabama." Defendant chemical companies' brief, at 2. Stated simply, it is not, because we hereby overrule Garrett and its progeny. We do so for the reasons set forth in Justice Harwood's scholarly dissent to this Court's no-opinion affirmance in Cline v. Ashland, Inc., 970 So.2d 755, 761 (Ala.2007)(Harwood, J., dissenting), which is attached as an appendix to this opinion. We hereby adopt the reasoning of that dissent as the opinion of the Court in this case.
In particular, as Justice Harwood stated, "a cause of action accrues only when there has occurred a manifest, present injury." Cline, 970 So.2d at 773 (Harwood, J., dissenting) (emphasis added). We need not repeat Justice Harwood's accurate description of the meaning of the word "manifest" in this context. Further, as Justice Harwood advocated in his dissenting opinion in Cline, the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively. Griffin, as the prevailing party in bringing about a change in the law, should be rewarded for her efforts.
For the foregoing reasons, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, PARKER, and MURDOCK, JJ., concur.
SEE, STUART, SMITH, and BOLIN, JJ., dissent.
SEE, Justice (dissenting).
In Cline v. Ashland, Inc., 970 So.2d 755 (Ala.2007), this Court addressed a case very much like this one. We declined in that case to adopt a "discovery rule" in toxic-tort cases. I noted in my special concurrence in that case that a revision of the law in this area is properly entrusted to the legislature.
First, the question of recovery for toxic torts has been in the hands of the legislature at least since Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), when this Court adopted the last-exposure rule. I noted in my special concurrence in Cline that "[t]he Garrett Court invited the legislature to respond." 970 So.2d at 756 (See, J., concurring specially). The legislature responded with Act No. 79-468, Ala. Acts 1979. This Court, however, invalidated *294 that act,[1] and the law reverted to the last-exposure rule declared in Garrett. Since our decision in Garrett, "the legislature has acted in this area both by enacting legislation" providing for a discovery rule in asbestos-related-injury cases, "and by considering, and thus far not adopting, proposed legislation." Cline, 970 So.2d at 757 (See, J., concurring specially).[2]
Matters of policy are properly the domain of the legislature;[3] it is for the legislature to determine when the statute of limitations begins to run in a toxic-tort case, because that question depends on a weighing of competing public policies. As a I wrote in Cline:
"We seek in Alabama to compensate those who have been injured. Ala. Const. 1901, Art. I, § 13 ('[T]hat every person, for any injury done him shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay.'). On the other hand, we also seek to avoid stale claims and the injustice such claims can engender. Travis v. Ziter, 681 So.2d 1348, 1355 (Ala.1996) ('At its core, the statute of limitations advances the truth-seeking function of our justice system, promotes efficiency by giving plaintiffs an incentive to timely pursue claims, and promotes stability by protecting defendants from stale claims.'). The proper balance between these competing public policies requires a weighing, and `[i]t is well established that "`[t]he Legislature is endowed with the exclusive domain to formulate public policy in Alabama.'"' Leonard v. Terminix Int'l Co., 854 So.2d 529, 534 (Ala. 2002) (citations omitted)."
Were this Court a legislative body, we would have for our consideration many more policy alternatives than the parties to this appeal have presented to us. For example, we could retain the last-exposure rule but allow those who are exposed to a toxic substance to bring a cause of action for exposure, with a showing of a manifest, present injury. In Garrett, we stated that the injury "occurred on the date or dates of exposure," 368 So.2d at 520; however, that rule operates to bar an individual claim where one cannot demonstrate "a manifest present injury." Hinton v. Monsanto Co., 813 So.2d 827, 829 (Ala.2001). Thus, a revision of the manifest-present-injury rule is an alternative resolution of the problem. The actual injury from exposure to toxic substances is, apparently, genetic modification that occurs at the time of exposure and that, years or even decades later, can lead to the development of serious illnesses. See Gary E. Marchant, Genetics and Toxic Torts, 31 Seton Hall L.Rev. 949, 970-71 (2001) (explaining that exposure to toxic substances can result in "DNA adducts, in which a toxic substance or its metabolites bind[] with DNA to form a stable and characteristic chemical *295 complex" and in cytogenic changes that are caused by a "breakage and rejoining of chromosomes after exposure to an agent capable of causing chromosome breaks"). The measure of damages for exposure could be based on the probability that an individual will develop a serious illness. We permit compensatory damages for future pain and suffering, Brown v. Lawrence, 632 So.2d 462 (Ala.1994), future medical expenses, Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801 (Ala.2003), and lost future income and wages, Joseph Land & Co. v. Gresham, 603 So.2d 923 (Ala.1992). The ability to measure genetic damage promises to improve as medical knowledge and technology advance. Allowing compensation after exposure would also allow one who has been exposed to a toxic substance to obtain preventive care or appropriate insurance. See Albert C. Lin, Beyond Tort: Compensating Victims of Environmental Toxic Injury, 78 S. Cal. L.Rev. 1439, 1489 (2005) ("[T]he compensation-for-risk approach enables individuals to pay for medical monitoring or preventative care."). This approach would also eliminate the logistical problems an employer faces when defending itself from a toxic-tort action.
There may well be other approaches available to the legislature, but this Court is not a legislature. I wrote in Cline that the plan that this Court here adopts "looks very much like the statute enacted by the legislature in response to this Court's decision in Garrett, but without the repose provision that this Court held unconstitutional and that the legislature considered essential to the Act." 970 So.2d at 757 (See, J., concurring specially). Yet, this Court today, some 29 years after Garrett, rejects the policy decision of the legislature that the rule of repose is an essential part of its chosen plan.
The legislature is better equipped than is this Court to adopt a change in the law to address the problem presented by this case, because the legislature is designed "to investigate the full impact of a public-policy decision on not only the parties involved in a particular case, but on the State as a whole; it is designed to offer the very kind of forward-looking resolution" this Court now offers. Cline, 970 So.2d at 758 (See, J., concurring specially) (citing Holmes v. Circo, 196 Neb. 496, 505, 244 N.W.2d 65, 70 (1976)).
"The imposition of this sort of policy change ... falls squarely within the power and competence of the legislative branch of our government. Berdeaux v. City Nat'l Bank of Birmingham, 424 So.2d 594, 595 (Ala.1982) ('[W]e cannot agree that redress should come by rewriting the law of torts.... To be able to answer [the question presented by the appeal] would require data that a court is ill equipped to gather, but which the legislature is equally capable of assessing. The issue itself presents a policy matter peculiarly within the province of the legislative as opposed to the judicial branch of government.... [C]ourts... should ... leave to the executive and legislative branches matters requiring resolution in the body politic.')."
Cline, 970 So.2d at 757 (See, J., concurring specially). Nor is it an adequate excuse for this Court's venture into the legislative function that because the legislature has failed to address a problem, it is up to the judiciary to do so.[4]
*296 The second, more or less independent, reason that I dissent is that the relief this Court orders today is prospective only. Prospective-only changes in the law are legislative in nature. Justice Scalia stated in his concurring opinion in Harper v. Virginia Department of Taxation, 509 U.S. 86, 107, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), that "[f]ully retroactive decision making was considered a principal distinction between the judicial and the legislative power" because "`that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing law is in relation to some existing thing already done or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases.'" 509 U.S. at 107, 113 S.Ct. 2510 (quoting Thomas Cooley, Constitutional Limitations 91 (1868)).
In Cline, I expressed my agreement with Justice Scalia that prospective application of judicial decisions does not comport with the traditional conception of judicial power:
"[P]rospectivity is incompatible with the traditional conception of judicial power. Moreover, the Alabama Constitution unequivocally states that `the judicial [branch] shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.' Article III, § 43, Ala. Const. 1901.... As we stated in City of Daphne v. City of Spanish Fort, 853 So.2d 933, 942 (Ala. 2003): `"`[T]o declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative.'"' (quoting Sanders v. Cabaniss, 43 Ala. 173, 180 (1869), quoting in turn Thomas M. Cooley, Constitutional Limitations 91-95 (1868))."
I believe that the prospective application of the new "discovery rule" in toxic-tort cases is an assumption of a legislative power denied this Court by the Constitution of Alabama.
For the foregoing reasons, I dissent.
STUART, J., concurs.
SMITH, Justice (dissenting).
I respectfully dissent.
The majority in this case overrules nearly 29 years of caselaw originating in Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979). As I stated in my special writing in Cline v. Ashland, Inc., 970 So.2d 755 (Ala. 2007) (Smith, J., concurring specially), I believe that it is incumbent on the legislature, and not this Court, to enact new law to determine the date of the accrual of the cause of action in toxic-substance-exposure cases:
"Although the Justices in Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), were split as to the proper definition of `accrued,' both the majority opinion and the dissenting Justices called on the legislature to enact legislation addressing that definition. Garrett thus placed the ball in the legislature's court.
"The legislature responded by enacting Act No. 79-468, Ala. Acts 1979 (codified at Ala.Code 1975, §§ 6-5-500 through -504). Section 6-5-502 provided a discovery rule for actions seeking damages for injuries resulting from exposure to toxic substances. However, § 6-5-502(c), which contained a rule of *297 repose, was declared unconstitutional in Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala.1982), as recognized in Daniel v. Heil Co., 418 So.2d 96 (Ala. 1982). Because § 6-5-504 provided that in the event any part of §§ 6-5-500 through -504 was declared invalid the entire act would become inoperable, Garrett remained the law. Soon thereafter, the legislature again acted to alter this Court's definition of `accrued' in toxic-substance-exposure cases by enacting Act No. 80-566, Ala. Acts 1980, but this time it limited the act strictly to claims alleging injury from asbestos. See Ala. Code 1975, § 6-2-30(b).5 The definition of `accrued' in toxic-substance-exposure cases other than asbestos cases was left untouched, and the legislature is presumed to have knowledge of this fact. Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003) ('The Legislature, when it enacts legislation, is presumed to have knowledge of existing law and of the judicial construction of existing statutes.').
"This Court has continued to apply the holding of Garrett since 1979. See, e.g., Ramey v. Guyton, 394 So.2d 2, 5 (Ala.1980) (stating that `while rejecting the "discovery of injury" rule, [Garrett] remained true to the common law "accrual" principle'); Tyson v. Johns-Manville Sales Corp., 399 So.2d 263, 268 (Ala.1981) (noting that, before the enactment of Act No. 80-566, Garrett held that a claim based on injury from exposure to asbestos accrued on the date of plaintiff's last exposure); American Mut. Liab. Ins. Co. v. Phillips, 491 So.2d 904, 908 (Ala.1986) (holding that `the longstanding damages rule followed in [Garrett]' was applicable in a case involving an injury sustained from exposure to cotton fibers); Moore v. Glover, 501 So.2d 1187, 1190 (Ala.1986) ('[T]his Court's opinion in [Garrett] settled the question of the "accrual" of a plaintiff's claim in a radiation exposure case for purposes of determining when the applicable statute of limitations begins to run....'); Hillis v. Rentokil, Inc., 596 So.2d 888, 890 (Ala.1992) (applying the rule in Garrett that the statute of limitations begins to run from the `date of injury'); Hubbard v. Liberty Mut. Ins. Co., 599 So.2d 20, 21 n. 2 (Ala.1992) (citing Garrett for the proposition that `the "date of injury," which starts the running of the statutory period of limitations in a continuous exposure case, occurs when the plaintiff was last exposed to the chemical or condition causing his injuries'); Johnson v. Garlock, Inc., 682 So.2d 25 (Ala.1996) (applying the rule of Garrett in an asbestos-exposure case in which § 6-2-30(b) did not apply); and Becton v. Rhone-Poulenc, Inc., 706 So.2d 1134, 1135 (Ala.1997) (citing Garrett for the proposition that `[f]or purposes of an action based on continuous exposure to a hazardous substance, the date of the injury is the day on which the plaintiff was last exposed to the hazardous substance causing the injuries'). See also Payton v. Monsanto Co., 801 So.2d 829 (Ala.2001).
"Proposals to adopt a discovery rule or to redefine when a cause of action accrues in toxic-substance-exposure cases have been introduced in the legislature, but those proposals have not been enacted. See Senate Bill 535 (2006 Regular Session) (expanding Ala.Code 1975, § 6-2-30(b), to provide that a civil action for any injury to the person resulting from exposure to `any toxic substance' shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury); House Bill 660 (2005 Regular Session) (proposing a constitutional amendment to provide that a *298 civil cause of action for exposure to toxic substances shall be deemed to accrue on the date the injured party should have reason to discover the injury giving rise to the cause of action); and House Bill 103 (2004 Regular Session) (providing that an action for breach of warranty or for injury caused by the `latent' effects of exposure to `substances' must be brought within two years from the date the injury is discovered or, by the exercise of reasonable diligence, should have been discovered).
"On some level, all statutes of limitations can lead to harsh results. On the other hand, the absence of statutes of limitations, or statutes of limitations that allow the litigation of exceedingly old and stale cases, can also lead to harsh results. Given the various types of toxic substances and injuries that could result from exposure to such substances, the science involved in detecting and diagnosing injuries or the manifestation of injuries resulting from such exposure, and the public-policy considerations that must be taken into account, I believe the legislature is better equipped than is this Court to formulate a proper definition of `accrued' in these types of cases. The legislature has certain fact-finding and investigative capabilities that this Court lacks; it is thus in a better position to weigh the countervailing public-policy considerations inherent in properly determining `how long is too long.' See Leonard v. Terminix Int'l Co., 854 So.2d 529, 534 (Ala.2002) (holding that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama); Berdeaux v. City Nat'l Bank of Birmingham, 424 So.2d 594, 595 (Ala.1982) (declining to create a duty requiring banks to provide protection for customers using automatic teller machines because to do so `would require data that a court is ill equipped to gather, but which the legislature is especially capable of assessing' and noting that `[t]he issue itself presents a policy matter peculiarly within the province of the legislative as opposed to the judicial branch of government'); and Matthews v. Mountain Lodge Apartments, Inc., 388 So.2d 935, 938 (Ala.1980) (plurality opinion) (stating that the legislature through hearings and other fact-finding proceduresis better equipped to accurately weigh various factors in creating law in accord with public policy).
"Given the long history of Garrett, the difficulty in crafting a proper definition of `accrued' in toxic-substance-exposure cases, along with the public-policy considerations that must be taken into account in formulating such a definition, and the legislature's specific prior action in asbestos-exposure cases, I believe that the legislature is the more appropriate body to impose a new rule.
"5 Act No. 80-566 was also challenged as unconstitutional, and part of it was declared unconstitutional. See Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981). However, unlike Act No. 79-468, it did not contain a clause nullifying the entire act if a portion were found to be invalid. Thus, the discovery rule provided by Act No. 80-566 in asbestos-exposure cases remains operable."
Cline, 970 So.2d at 759-761 (Smith, J., concurring specially). I continue to adhere to my special writing in Cline.
BOLIN, J., concurs.

APPENDIX
HARWOOD, Justice (dissenting [from the no-opinion affirmance in Cline v. Ashland, Inc., 970 So.2d 755, 761 (Ala.2007)]).
*299 In their special concurrences to this Court's decision [in Cline] to affirm the trial court's summary judgment in this appeal without an opinion, Justice See and Justice Smith emphasize that it is the role of the legislature, not this Court, to declare public policy. I quite agree. Indeed, the legislature has already acted and declared the public policy applicable to this case, by means of the interaction of two provisions of the Code of Alabama. Section 6-2-30(a), Ala.Code 1975, provides, in pertinent part, that "[a]ll civil actions must be commenced after the cause of action has accrued within the period prescribed... and not afterwards...." Section 6-2-38(1), Ala.Code 1975, provides that an action of the type Jack Cline has filed "must be brought within two years." Therefore, the legislatively declared public policy is that an action such as Cline's can be filed (within the two-year limitations period) only after the cause of action has accrued. By this dissent, I do not presume to advocate a contrary public policy; I simply attempt to honor the public policy the legislature has declared, by correctly construing the statutory language "cause of action has accrued" in § 6-2-30(a) in accord with traditional principles of tort law.
Neither special concurrence takes the position that the construction given that language in Garrett v. Raytheon Co., 368 So.2d 516 (Ala.1979), was in accord with those principles and true to the legislature's intent. They simply take the position, in support of which they offer reasoned argument, that any change from the rule set out in Garrett must, at this late date, be left exclusively to the legislature. For the reasons I set forth hereinafter, I respectively disagree.
First, however, these three miscellaneous points: Although Justice See [in his special writing in Cline] fairly states the basic facts underlying Cline's tort claim, it is appropriate to note that it is undisputed that acute myelogenous leukemia can be caused by exposure to benzene, which this Court described in Shell v. Union Oil Co., 489 So.2d 569, 570 (Ala.1986), as "a carcinogen known to cause leukemia." Also, Cline made the alternative argument before the trial court and on original submission on this appeal that his "last exposure" in 1999 to benzene contained in the product of an alleged "joint tortfeasor" of the present appellees should serve to delay the running of the statute of limitations as to them as well. Because this contention was not revisited in Cline's brief in support of his application for rehearing, it was thereby waived and will not now be considered. Birmingham News Co. v. Horn, 901 So.2d 27, 77 (Ala.2004). Last, the defendants have not attempted to argue that the natural history of acute myelogenous leukemia is such that Cline must have been suffering from it, i.e., that he must have actually experienced a manifest, present injury in connection with it, before his October 7, 1999, diagnosis. Accordingly, Cline's action filed on April 6, 2001, was timely under the two-year statute of limitations, if the commencement of the running of that statute is measured from October 7, 1999, or any other time within two years before April 6, 2001.

Relevant Caselaw and Legislation
In Garrett, supra, Jerry Kenneth Garrett filed an action in 1978 against seven companies he alleged had designed, manufactured, or serviced certain radar systems with which he had had contact from 1955 to 1957; he asserted that because of the defective condition of those systems, he unknowingly had been exposed to massive dosages of dangerous radiation. He had experienced no symptoms or health problems until March 1975. He then consulted numerous doctors, but the nature of his *300 problems was not diagnosed until March 1977 when a radiologist advised him that his problems were the result of his earlier radiation exposure. Garrett's action was filed within one year of that diagnosis, but more than one year after the first manifestation of his health problems and more than two decades after his last exposure to the radiation. Then, as now, § 6-2-30, Ala.Code 1975, required that all civil actions must be commenced within the statutorily prescribed limitations period "after the cause of action has accrued" (emphasis supplied). The then applicable statute of limitations, former § 6-2-39(a)(5), required "[a]ctions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section" to be commenced within one year from accrual. (That provision was recodified as § 6-2-38(1) when the limitations period was increased to two years in 1985.)
The opinion of the five-member Garrett majority (four Justices dissented) commenced: "When does the statute of limitations begin to run for injuries suffered as a result of radiation exposure? We conclude that it begins to run when the plaintiff is exposed to radiation and an injury occurs." 368 So.2d at 517-18 (emphasis supplied). However, the majority then collapsed injury into exposure, holding that "the statute of limitations of one year began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered." The Court justified this conclusion by stating, "[i]f plaintiff was not injured in 1955-1957 then defendant committed no negligent act at that time which resulted in injury and defendant would not be liable. If plaintiff did become injured or damaged at that time, then the statute of limitations has run." 368 So.2d at 521. The Court similarly reasoned, "[d]amage must have occurred at the time of exposure else defendant would not be liable. It is simply that all the progressive nature of the injury has not made itself manifest at the time of the last exposure." 368 So.2d at 520. As Justice Shores observed in her dissent, "[t]he majority opinion assumes that the injury occurred simultaneously with the plaintiff's exposure to the radiation." 368 So.2d at 526. She disagreed, stating that "[t]he defendant's exposure of the plaintiff to radiation would not create a cause of action in the plaintiff until injury resulted from that exposure." 368 So.2d at 526. Justice Jones in his dissenting opinion on application for rehearing likewise explained that the holding of the majority "reduces date of injury (and thus accrual of the cause of action) to a legal conclusion without regard to when the injury in fact occurs." 386 So.2d at 528.
Leading up to its conclusion that "[t]he injury in this case occurred on the date or dates of exposure," 368 So.2d at 520, the majority acknowledged that
"there are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action accrues, and the statute of limitation begins to run, `when, and only when, the damages are sustained.'"
368 So.2d at 519. The countervailing rule was explained by the Court as follows:
"`"If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage (then *301 apparent) however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action."'"
368 So.2d at 519 (quoting Home Ins. Co. v. Stuart-McCorkle, 291 Ala. 601, 608, 285 So.2d 468, 473 (1973), quoting in turn Kelley v. Shropshire, 199 Ala. 602, 604-05, 75 So. 291, 292 (1917)).
The majority's explanation that Garrett's radiation exposure fell within the second class of cases because the "defendant committed no negligent act at that time which resulted in injury and defendant would not be liable," 368 So.2d at 521, and "[d]amage must have occurred at the time of exposure else defendant would not be liable," 368 So.2d at 520, seems to me to be no more than circular reasoning that ignores the first class of cases. Indeed, to my best attempt to follow the reasoning of the Garrett majority, it represents judicial public policy-making of the type the majority in this case now rightfully decries.
In selecting "last exposure" as the accrual date, the Garrett Court relied upon three of its prior decisions and a federal case: Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937); American Mut. Liab. Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 (1938); Garren v. Commercial Union Ins. Co., 340 So.2d 764 (Ala.1976); and Minyard v. Woodward Iron Co., 81 F.Supp. 414 (N.D.Ala.1948), aff'd 170 F.2d 508 (5th Cir.1948).
Howell simply commented in connection with its review of a lower court's order abating a nuisance caused by the overflow of sewage but failing to award any monetary damages, as follows:
"It may not be out of place to observe, as to damages that are recurring and separable, that the right to recover, as to such damages not barred by statute, is not affected by the fact that other damages of the same character are barred by statute, provided the damages sustained within the statutory period are separable from those that are barred under the statute by the lapse of time."
234 Ala. at 162, 174 So. at 628. There was no issue in the case about when each item of damage had occurred.
In Agricola Furnace, the plaintiff in the lawsuit underlying his employer's declaratory-judgment action against its insurer alleged that he had contracted silicosis and tuberculosis by his exposure to dust and metal particles in his 10 years of employment. The plaintiff claimed that "along about the first of May 1936 while so engaged [in his employment] he was made sick in that way," although his sickness "did not appear suddenly, violently or by accidental means but gradually appeared to grow progressively worse as a result of said continuous effect of said dust and particles of metal...." 236 Ala. at 537, 183 So. at 678. The Court stated its understanding of the employee's complaint to be that his exposure was continuous, "but that in May 1936 he was for that cause made sick." 236 Ala. at 537, 183 So. at 679. The employee filed his action in November of that year; thus, there was no issue of its timeliness vis-à-vis the stated date of injury. The Court held that a tort "may be of a continuous sort, and, if so, a recovery may be had for all damages which occurred within the period of limitations," and that such a continuous tort could qualify as "an accident" under an insurance policy, "however difficult it may be to separate the amount of the damages done within the period of the statute of limitations from that occurring in the period *302 preceding." 236 Ala. at 538, 183 So. at 679.
In Minyard, the federal district judge awarded the plaintiff, who had been exposed to silica dust from November 1945 until he quit his job for health reasons in September 1946, monetary damages representing the aggravation by that exposure of the employee's preexisting "silicotic condition." The judge held that Alabama's one-year statute of limitations "began to run from the last date on which plaintiff inhaled silica dust while employed by defendant...." 81 F.Supp. at 417. Citing Howell and Agricola Furnace, among other cases, the judge concluded that under Alabama caselaw
"a recovery may be had for injury resulting from a continuous tort subject to the limitation that only damages which occurred within the period of limitations may be recovered, provided that the damages sustained within the statutory period are separable from those that are barred under the statute by the lapse of time."
81 F.Supp. at 417. The United States Court of Appeals for the Fifth Circuit affirmed the district court's judgment, stating simply that it found no merit in the defendant's contention that the action was barred by Alabama's one-year statute of limitations. Woodward Iron Co. v. Minyard, 170 F.2d 508 (5th Cir.1948).
Garren was a third-party-tortfeasor action by an employee who had suffered pulmonary injury "as a consequence of continuously breathing dust and lint" emanating from a machine she had operated on her job for several years, until she was forced to quit work on April 23, 1974. On April 22, 1975, she sued the manufacturer of the machine on a products-liability theory and her employer's insurance carrier on a negligent-safety-inspection theory.
"Both defendants were granted partial summary judgments on the grounds that plaintiff's claims for relief, seeking to recover damages for injuries suffered more than one year prior to April 22, 1975, are barred by the one-year statute of limitations; further, any damages to which plaintiff might otherwise be entitled could not include those for any injuries suffered by plaintiff more than one year prior to April 22, 1975. Plaintiff appeals from these partial summary judgments. Rule 54(b), [Ala. R. Civ. P.]."
340 So.2d at 766.
Thus, the issue in Garren was not when the statute of limitations had been triggered, but simply whether the plaintiff could recover damages for an injury that had occurred more than one year before the date she sued. Given the fact that plaintiff's right to file a third-party action arose out of the Workmen's Compensation Act, the Court reasoned that "the statute of limitations begins to run from the date of the injury, which is defined in [Code of Alabama, Tit. 26,] § 313(42) [of the Workmen's Compensation Act] as the date of the last exposure to the hazards of the disease which gave rise to the injury." 340 So.2d at 765. That Code section (recodified at the time of Garrett as § 25-5-117) provided that for the purpose of bringing a workmen's compensation claim, "[t]he date of the injury shall mean ... the date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed to the hazards of the disease."
However, as Justice Jones emphasized in his dissent in Garrett and his extended dissent on denial of application for rehearing in that case, the Garren Court's reliance on the workers' compensation Code section was "misplaced because the third-party *303 common law action in Garren does not draw upon the Workmen's Compensation Act for its definition of date of injury." 368 So.2d at 525. Justice Jones pointed out that if the Workmen's Compensation Act definition of date of injury had in fact applied, Garren should have been decided differently because under the Workmen's Compensation Act Ms. Garren would have been entitled to recover her full injuries, not just those incurred during the one-year period preceding the filing of her complaint. Justice Faulkner likewise explained in his dissent in Garrett that "to engraft this [Workmen's Compensation Act] statutory scheme on unrelated common law claims is illogical and unsupported." 368 So.2d at 523.
Recognizing the harsh effect of its holding, the Garrett majority encouraged the legislature to consider adopting a "discovery" rule, "so that a plaintiff's claim will not be barred when he has no way to ascertain that he has been damaged by a deleterious substance because the result has not manifested itself until the statute of limitations has run." 368 So.2d at 521 (emphasis supplied). Noting that the legislature "`has the inherent power to determine the date and time within which an action may be brought unless the time fixed is clearly arbitrary or unreasonable,'" 368 So.2d at 520 (quoting an earlier case), the Court stated:
"It may be that Alabama's rejection of the `Discovery Rule' is contrary to the weight of opinion generally. However, as this Court is committed to the proposition that the legislature has the inherent power to establish statutes of limitation, we have no other alternative than to leave it to the legislature to abrogate this rule and adopt a more equitable one should it see fit...."
368 So.2d at 521. Justice Shores in her dissent joined the majority in inviting the legislature to remedy the situation.
The legislature attempted to do just that later that year, enacting Act No. 79-468, Ala. Acts 1979, now codified as §§ 6-5-500 through -504. The legislation represented "a comprehensive system consisting of the time for commencement of actions, for discoverability of actions based on insidious disease and the repose of actions" and "a complete and unified approach to the time in which product liability actions" might be brought. § 6-5-500. It contained, among other things, a "rule of discovery" whereby latent-injury cases resulting from exposure to toxic substances over a period of time could be brought within one year from the date that the injury "is or in the exercise of reasonable diligence should have been discovered by the plaintiff," and the cause of action was "deemed to accrue" at that time. § 6-5-502(b). Section 6-5-503 stated that the legislation would "apply only to product liability actions, wherein each element accrues after the effective date of this division, and no provision of this division shall have retroactive application." The legislature also included a 10-year absolute rule of repose measured from the date the product was first put to use, § 6-5-502(c), but that feature was declared unconstitutional in Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala.1982). This Court's decision in Lankford had the result of invalidating the entire act, because § 6-5-504 provided that "each section, clause, provision, or portion" of the act was to be deemed "inseparable and nonseverable from all others," and in the event any aspect of the legislation was declared invalid or unconstitutional "the entire [Act] and each section, clause, provision, or portion thereof shall be inoperative and have no effect." Therefore, after Lankford Act No. 79-468 was a "dead letter."
*304 In 1980 the legislature enacted Act No. 80-566. Section 2 of that act, now codified as § 6-2-30(b), provides that asbestos-exposure claims "shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Although Section 3 of Act No. 80-566, stating that following its effective date the act would "apply retroactively to all pending causes of action," was held unconstitutional in Tyson v. Johns-Manville Sales Corp., 399 So.2d 263 (Ala.1981), as violating § 95, Ala. Const.1901, the prospective "discovery rule" feature remains viable. Bills providing for the adoption of the discovery rule in all hazardous-exposure cases have been proposed in the legislature for at least the last three years, but have not been passed; Senate Bill 534 and Senate Bill 535 (2006 Regular Session); House Bill 659 and House Bill 660 (2005 Regular Session); and House Bill 93 and House Bill 103 (2004 Regular Session).
In his dissent in Garrett, Justice Jones noted the potentially anomalous result that logically could flow from the artificiality of the "last exposure" rule of accrual:
"The holding of the majority says, or it may be fairly interpreted to say, that one so exposed can bring his action within the year of last exposure and be entitled to at least nominal damages without medical proof of radiation damage  injury being presumed as a matter of law; or, having timely filed his claim, he may be able to delay trial to await the manifestations of injury and medical proof."
368 So.2d at 528 (footnote omitted).
The flawed artificiality of the Garrett Court's choice of the last-exposure rule was evident when this Court had to apply it to the particular facts in Hillis v. Rentokil, Inc., 596 So.2d 888 (Ala.1992). The plaintiff there suffered physical injury as a result of his exposure to chromated copper arsenate during the course of his employment from September 1985 to December 31, 1987, when his employment was terminated. His adverse physical symptoms had manifested well before that "last exposure," however, and he had actually been diagnosed by a doctor on September 25, 1987, who advised him "to see a dermatologist because of an allergic reaction to the [chromated copper arsenate]." 596 So.2d at 889. He did not file suit until November 15, 1989. Relying on the traditional rule that the running of the statute of limitations is triggered by the first actual damage, the defendant argued that the limitations period had begun to run, at the latest, by September 25, 1987, when the plaintiff's physical symptoms had progressed to the point that he had returned to see his doctor and had, in effect, received a diagnosis. Constrained by the Garrett last-exposure rule, however, this Court held that because the action was filed within two years after the date of last exposure, it was timely. Thus, in Hillis the last-exposure rule became a sword instead of a shield; an individual whose cause of action had clearly accrued under the conventional common-law approach, because he had experienced a manifest, present injury, was given the protection of the "last exposure equals first injury" rule of Garrett.
Although, as Justice See notes, this Court has consistently chosen to continue to follow in subsequent cases the last-exposure rule of Garrett, it has done so simply by accepting that holding at face value, under the constraint of stare decisis, without any reexamination of its underlying rationale.
Garrett's last-exposure rule is purely a "court made" rule, because § 6-2-30 then provided, and § 6-2-30(a) now provides, *305 only that civil actions must be commenced within the applicable limitations period "after the cause of action has accrued." The Garrett Court simply declared, as a matter of policy rather than scientific fact, that a toxic-exposure cause of action accrues contemporaneously with the last exposure to the toxic substance, it being judicially deemed that an injury has occurred at that time as a matter of law.
Neither Garrett nor any of its progeny articulate any scientific basis for that conclusion, and certainly the defendants in the present case do not argue that benzene exposure, even up through a last exposure, is known to cause concurrently some actual damage at the cellular level or otherwise to inflict an objectively ascertainable bodily injury.
Although it is undisputed that "the Legislature has the inherent power to enact a statute of limitations establishing the period within which a claim must be brought," Baugher v. Beaver Constr. Co., 791 So.2d 932, 934 n. 1 (Ala.2000), the question presented by this appeal is whether this Court should reexamine its construction in Garrett of the operative phrase in § 6-2-30, "after the cause of action has accrued" and interpret it differently than it did in Garrett for toxic-substance-exposure cases.

The Doctrine of Stare Decisis, and When Change in the Law is the Role of the Judiciary
"Stare decisis is `[t]he doctrine of precedent under which it is necessary for a court to follow earlier judicial decisions when the same points arise again in litigation.' Black's Law Dictionary, 1443 (8th ed.2004)." Goldome Credit Corp. v. Burke, 923 So.2d 282, 292 (Ala.2005). As we explained in Burke:
"Stare decisis, however, `is a golden rule, not an iron rule.' Ex parte Nice, 407 So.2d 874, 883 (Ala.1981) (Jones, J., dissenting). At times `this Court has had to recognize ... that it is necessary and prudent to admit prior mistakes and to take the steps necessary to ensure that we foster a system of justice that is manageable and that is fair to all concerned.' Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997). As Justice Maddox has stated: `[W]hile we accord "due regard to the principle of stare decisis," it is also this Court's duty "to overrule prior decisions when we are convinced beyond ... doubt that such decisions were wrong when decided or that time has [effected] such change as to require a change in the law."' Ex parte State Farm Fire & Cas. Co., 764 So.2d 543, 545-46 (Ala.2000) (emphasis added) (quoting Beasley v. Bozeman, 294 Ala. 288, 291, 315 So.2d 570, 572 (1975) (Jones, J., concurring specially)). See also Ex parte Melof, 735 So.2d 1172, 1186 (Ala.1999) (`"`courts are not bound by stare decisis to follow a previous interpretation [that is] later found to be erroneous'"' (quoting Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 638 (Ala.1993), quoting in turn 2B Norman J. Singer, Sutherland Statutory Construction § 49.05 at 16 (5th ed.1992)))."
923 So.2d at 292-93.
Admittedly, we stated in Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237, 241 (Ala.2005), that "[w]hen revisiting this Court's interpretation of a statute, we will afford greater deference to the doctrine of stare decisis than we would if asked to revisit an interpretation of a constitutional provision." Nonetheless, this Court on a number of occasions has felt obliged to correct its earlier statutory construction, including Burke, supra. For example, in Foremost Insurance Co. v. Parham, 693 So.2d 409 (Ala.1997), one of the issues *306 presented was when a fraud cause of action "accrued" under Ala.Code 1975, § 6-2-30(a), so as to trigger the running of the limitations period of § 6-2-38(l). Before 1989, the Court had construed the term "accrued" in that context to mean that "a fraud claim accrued, thus commencing the running of the statutory limitations period, when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." 693 So.2d at 417. Under the combined effect of Hickox v. Stover, 551 So.2d 259 (Ala.1989), and Hicks v. Globe Life & Accident Insurance Co., 584 So.2d 458 (Ala.1991), that judicial interpretation was changed so that the theretofore recognized "reasonable reliance" standard was replaced by a "justifiable reliance" standard. Under that new construction, a person's reliance was to be judged only by what he or she actually knew of facts that would have put a reasonable person on notice of fraud. 693 So.2d at 418. The Court determined in Parham, supra, that the reasonable-reliance standard had in fact been the proper construction for the statutory term "accrued" and overruled Hickox and Hicks on that point. In doing so, the Court declared:
"Although this Court strongly believes in the doctrine of stare decisis and makes every reasonable attempt to maintain the stability of the law, this Court has had to recognize on occasion that it is necessary and prudent to admit prior mistakes and to take the steps necessary to ensure that we foster a system of justice that is manageable and that is fair to all concerned. See, e.g., Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975), in which Justice Shores, writing for this Court, stated: `As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them.'"
693 So.2d at 421.
The Court further held in Parham, however, that
"[b]ecause this return to the reasonable reliance standard represents a fundamental change in the law of fraud, we think it appropriate to make the new standard applicable in all fraud cases filed after the date of this decision, i.e., all cases filed after March 14, 1997."
693 So.2d at 421.
In Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), the plaintiff/appellant sought "a re-evaluation of this court's construction" of a statute, acknowledging that in order for the plaintiff/appellant to prevail, the Court would have to overrule a line of cases extending for more than 60 years following the 1907 enactment of the statute. The interpretation accorded the statute during that period had occasioned opinions employing what the Jackson Court labeled a "judicial sleight of hand," the necessity for which "could have been avoided entirely by giving to the 1907 legislative enactment its clear meaning." 294 Ala. at 597, 320 So.2d at 72. In choosing to correct its erroneous construction of the statute, despite the fact that the legislature had reenacted the statute without change as a part of its adoption of the Codes of 1923 and 1940, the Court had the following to say:
"No one believes in the validity of the rule of stare decisis and the necessity for stability in the law more than we do....
"....
"As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them. The city here argues that the failure of *307 the legislature to act in this area constitutes its approval of the construction placed on its enactments by this court. It is equally arguable, as noted by Justice Currie, concurring specially in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 626 (1962), that `... they (the legislature) deferred to the supposed wisdom of the court, or else determined that the court should correct its own mistakes,' or as Judge Moremen of the Court of Appeals of Kentucky responded to the same argument in Haney v. City of Lexington, (Ky.), 386 S.W.2d 738, 741 (1964):
"`... It seems to us that an equally reasonable assumption is that the legislature might expect the courts themselves to correct an unjust rule which was judicially created....'"
294 Ala. at 597-98, 320 So.2d at 73.
More recently, we explained in Ex parte State Farm Fire & Casualty Co., 764 So.2d 543, 545-46 n. 3 (Ala.2000):
"`... The doctrine of stare decisis tends to produce certainty in our law, but it is important to realize that certainty per se is but a means to an end, and not an end in itself. Certainty is desirable only insofar as it operates to produce the maximum good and the minimum harm and thereby to advance justice.... When it appears that the evil resulting from a continuation of the accepted rule must be productive of greater mischief to the community than can possibly ensue from disregarding the previous adjudications on the subject, courts have frequently and wisely departed from precedent, 14 Am.Jur., Courts, § 126.'"
In Lloyd v. Service Corp. of Alabama, Inc., 453 So.2d 735 (Ala.1984), the Court, having determined that a change from the law as previously declared by it was necessary, proceeded to determine whether the change "should be effected by the judiciary." 453 So.2d at 740. The Court's analysis of that issue was as follows:
"First, the judiciary originally created this rule of law. It has not been altered, amended, or expanded upon by our legislative body. In this circumstance, where a judicial creation has become outmoded or unjust in application, it is more often appropriate for the judicial body to act to modify the law. Further, it is not uncommon for the Legislature to defer to the court's wisdom regarding such a rule of law. See Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68, 73 (1975); Haney v. City of Lexington, 386 S.W.2d 738, 741 (Ky.1964); and Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 626 (1962). McAndrew v. Mularchuk, 33 N.J. 172, 193, 162 A.2d 820, 832 (1960).
"Second, this is a tort law issue. An unjust tort law may indirectly affect every citizen of the state, but it will almost never directly affect enough people at any given point in time to generate a great deal of attention. It is not likely, therefore, to be placed on the Legislature's crowded agenda for consideration. For that reason, tort law issues are, when certain other factors are present, proper subjects for judicial reform.
"Last, when it has determined that a judicially created law is unjust in its application, this court cannot long permit itself to be used as an instrument of inequity by refusing to act to change the law. To do so undermines our credibility in the public perception. The judicial branch of government cannot avoid action. It must continuously apply the law to resolve the conflicts between citizens of this state. To continue to apply a judicially created rule this court has recognized *308 as obsolete and unjust is a violation of its integrity."
453 So.2d at 740.
Given the legislative history recited earlier, particularly the legislature's prompt response to this Court's decision in Garrett by enacting Act No. 79-468 (Ala.Code 1975, §§ 6-5-500 through -504) so as to register its disagreement with the holding in Garrett, I do not view the legislature's failure to act further than it has done in this area to constitute its approval of the construction this Court has placed on the statutory term "accrued" in toxic-exposure cases. Since Garrett, this Court has again and again reaffirmed the proposition acknowledged but ignored in Garrett  that there are cases where the defendant's act does not cause a contemporaneous injury to the plaintiff, but an injury later manifests as a result of, and in furtherance and subsequent development of, the defendant's act. See, e.g., Ex parte Stonebrook Dev., LLC, 854 So.2d 584 (Ala.2003); Hinton ex rel. Hinton v. Monsanto, 813 So.2d 827 (Ala.2001); Payton v. Monsanto, 801 So.2d 829 (Ala.2001); Ex parte Floyd, 796 So.2d 303 (Ala.2001); System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala. 1996); Smith v. Medtronic, Inc., 607 So.2d 156 (Ala.1992); and Payne v. Alabama Cemetery Ass'n, Inc., 413 So.2d 1067 (Ala. 1982). In Hinton, the Court was asked in a certified question from a federal district court whether Alabama law recognized a cause of action for medical monitoring following hazardous-substance exposure when the plaintiffs were not claiming any present injury or illness. Based on that precise set of facts, the Court concluded that Alabama law "provides no redress for a plaintiff who has no present injury or illness" because, as the plurality opinion explained, "Alabama law has long required a manifest, present injury before a plaintiff may recover in tort." 813 So.2d at 831-32, 829.
In his special writing concurring in the result, which I joined, Justice Lyons observed:
"Turning to the question as phrased by the district court, this Court, dealing with a similar issue involving the accrual of a cause of action for radiation exposure, stated the question as follows: `When does the statute of limitations begin to run for injuries suffered as a result of radiation exposure?' Garrett v. Raytheon Co., 368 So.2d 516, 517-18 (Ala.1979). This Court then answered the question as follows: `We conclude that it begins to run when the plaintiff is exposed to radiation and an injury occurs.' Id. (emphasis added). Recently, in Payton v. Monsanto Co., 801 So.2d 829, 835 (Ala.2001), this Court quoted Ex parte Floyd, 796 So.2d 303, 308 (Ala. 2001):
"`"Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run."'"
813 So.2d at 832.
In Southern Bakeries, Inc. v. Knipp, 852 So.2d 712 (Ala.2002), addressing the issue of what constitutes an "injury" under § 6-2-30(b), Ala.Code 1975, sufficient for a cause of action for exposure to asbestos to accrue, the Court had this to say:
"Alabama has long required a manifest, present injury before a plaintiff may recover in tort.7 Hinton v. Monsanto Co., 813 So.2d 827, 829 (Ala.2001); see also DeArman v. Liberty Nat'l Ins. Co., 786 So.2d 1090 (Ala.2000); Stringfellow v. State Farm Life Ins. Co., 743 So.2d 439 (Ala.1999); Williamson v. Indianapolis *309 Life Ins. Co., 741 So.2d 1057 (Ala.1999); Ford Motor Co. v. Rice, [726 So.2d 626 (Ala.1998)]; Pfizer, Inc. v. Farsian, 682 So.2d 405 (Ala.1996). The plaintiff in Hinton did not allege that he sustained a physical injury or an illness as a result of his exposure to polychlorinated biphenyls ('PCBs'); instead, he sought to recover the cost of medical monitoring he alleged was made necessary by his exposure to PCBs. 813 So.2d at 828. In Hinton, a plurality of this Court held that Alabama law provides no redress for a plaintiff who has suffered no present injury or illness. 813 So.2d at 831-32.
"7 It is a basic principle of tort law that in negligence cases, the plaintiff must suffer actual injury; the threat of future harm, not yet realized, is not enough. W. Page Keeton et al., The Law of Torts § 30 at 165 (5th ed. 1984)...."
852 So.2d at 716-17.
As things now stand, and as left in place by the majority in [Cline], the law in this State would seem to be this: A person exposed to a toxic substance having the potential to cause disease on a delayed basis, but who has suffered no manifest, present injury within two years thereafter, may not file an action within that two-year period. Hinton, supra; Southern Bakeries, supra. If, after two years, that same person in fact suffers an injury from the exposure and files an action, the action will be dismissed on the basis that it should have been filed earlier. Thus, no matter when the person attempts to file the action, it is either too soon or too late. This is a classic Catch-22,[6] and one that would seem to violate Art. 1, § 13, Ala. Const. 1901, which provides, in pertinent part, "that every person for any injury done him... shall have a remedy by due process of law."
Perhaps, however, I am mistaken in understanding that the interaction of the rule in Garrett and our more recent caselaw serves to disallow the maintenance of a personal-injury tort claim after exposure to a toxic substance but in advance of a manifest, present injury. After all, as noted earlier, Justice Jones forecast in his dissent in Garrett that "one so exposed can bring his action within the year [now two years] of last exposure without medical proof of ... damage  injury being presumed as a matter of law." 368 So.2d at 528. In fact, the defendants embraced this view of the Garrett rule when they asserted in their initial brief to this Court that Cline "was entitled to sue these defendants for his exposure to benzene at Griffin Wheel from the first day he was exposed to benzene there to any time up to and including the day two years after he was last exposed there to benzene supplied by the defendants...." (Appellee's brief, p. 43.) If this then is the correct state of the law, why could not the plaintiff in such a situation, after asserting a "Garrett injury," claim as additional damage mental anguish stemming from his or her fear of subsequently developing disease? And why could not the plaintiff in such a case, if asserting claims of fraudulent suppression, misrepresentation, and/or wantonness (as in Southern Bakeries, supra), additionally maintain a demand for punitive damages? All without any proof of any manifest, present injury.
The number of persons eligible to file an action if all that is required is some period *310 of exposure to a toxic substance is potentially huge. See Ex parte BASF Corp., 957 So.2d 1104 (Ala.2006) (1,600 plaintiffs); Ex parte Flexible Prods. Co., 915 So.2d 34 (Ala.2005) (1,675 plaintiffs); and Ex parte Monsanto Co., 862 So.2d 595 (Ala.2003) (3,500 plaintiffs).
I submit that under either view of the implications of the Garrett rule, the law is confounded; thus, a continued blind obedience to that rule, simply in deference to stare decisis, does not serve the law, but rather greatly disserves it. As the Court explained in Ex parte First Alabama Bank, 883 So.2d 1236, 1245 (Ala.2003):
"Justice Houston, writing specially in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081 (Ala.1989), embraced a useful standard for weighing the need for change against the advantages of settled principles of law under the doctrine of stare decisis. He posed the question as follows: whether the ratio decidendi of earlier precedent would `"hypothetically be consented to today by the conscience and the feeling of justice of the majority of all those whose obedience is required by [that] rule of law?"' Southern States Ford, Inc., 541 So.2d at 1093 (quoting Laun, Stare Decisis, 25 Va. L.Rev. 12, 22 (1938))."
Surely the conscience and feeling of justice of the majority of those whose obedience would be required to a rule that says an action filed by a victim of delayed-onset injury from toxic-substance exposure will always be disallowed as either premature or too mature would be shocked. On the other hand, similar shock would surely be the reaction of the majority of those required to accept a rule that would permit anyone and everyone exposed to a toxic substance to maintain a tort action even though that person had not yet suffered, and statistically would probably never suffer, any health problem as a result of that exposure.
Based on the foregoing analyses, I conclude that the Garrett construction of the § 6-2-30(a) phrase "after the cause of action has accrued" in toxic-substance-exposure situations should be corrected, that it should be corrected now, and that this Court should undertake the correction rather than abdicating that responsibility to the legislature.

Construction of "Accrued"
The proper construction of the term "accrued" in § 6-2-30(a) in the context of toxic-substance-exposure cases should honor the rule that a cause of action accrues only when there has occurred a manifest, present injury. I understand "manifest" in this context to mean an injury manifested by observable signs or symptoms or the existence of which is medically identifiable. "Manifest" in this sense does not mean that the injured person must be personally aware of the injury or must know its cause or origin. All that is required is that there be in fact a physical injury manifested, even if the injured person is ignorant of it for some period after its development. This approach is mandated by the rule stated as early as Kelly v. Shropshire, 199 Ala. 602, 605, 75 So. 291, 292 (1917), and as late as Gilmore v. M&B Realty Co., LLC, 895 So.2d 200, 208 (Ala.2004), and on innumerable occasions in between, that "plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, [does not] postpone the running of the statute [of limitations] until the tort or injury is discovered." An oft-declared companion rule is that "this Court will not apply the discovery rule unless it is specifically prescribed by the Legislature." Travis v. Ziter, 681 So.2d 1348, 1354 (Ala. 1996).
*311 We operate within our proper sphere when we undertake to determine the construction that should be ascribed to the legislatively prescribed term "accrued" in § 6-2-30(a); we would operate outside that sphere were we to attempt to add to the text of § 6-2-30(a) so as to superimpose some sort of discovery feature. Thus, I reject the notion that our prior and present requirement of a "manifest," present injury means that the injury must be obvious to and known by the injured party. That would simply represent the creation of a type of discovery rule. I reaffirm that creation of a discovery rule lies within the province of the legislature, which is equipped to weigh the competing public-policy arguments and to fashion variations of discovery principles tailored to the particular nature of each affected cause of action. The legislature has shown its special capability in that regard by structuring variations of discovery features in the following statutes: § 6-2-3; § 6-2-30(b); § 6-5-482; § 6-5-502(b); § 6-5-574(a); § 7-2A-506(2); § 8-19-14; § 8-26A-16(c); and § 8-27-5.
Thus, as used in the phrase "manifest, present injury," the word "manifest" designates a condition that has evidenced itself sufficiently that its existence is objectively evident and apparent, even if only to the diagnostic skills of a physician.
"An injury manifests itself `when it has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury.' (Marriage & Family Center v. Superior Court (1991) 228 Cal. App.3d 1647, 1654 [279 Cal.Rptr. 475])."
Photias v. Doerfler, 45 Cal.App.4th 1014, 1021, 53 Cal.Rptr.2d 202, 206 (1996), abrogated on other grounds by Arredondo v. Regents of Univ. of Cal., 131 Cal.App.4th 614, 619, 31 Cal.Rptr.3d 800 (2005).
Moreover, this case does not properly present the issue whether a discovery feature should apply, because Cline claims that his injury occurred on the date of his diagnosis of acute myelogenous leukemia, and there is no present argument by the defendants that the actual onset of the disease had accrued at some earlier time.
The defendants argue that apart from the statute-of-limitations issue there were failure-of-proof bases on which the trial court should have entered a summary judgment in their favor, and this Court could rely on those bases to affirm that judgment. They acknowledge that the trial court did not reach those issues, but they invoke the principle of appellate procedure that this Court may affirm the judgment of a trial court on any valid ground presented by the record, regardless of whether the ground was considered, or even if it was rejected, by the trial court. See Unum Life Ins. Co. of America v. Wright, 897 So.2d 1059, 1082 (Ala. 2004). Because I would not affirm the summary judgment here based on a statute-of-limitations ground, it behooves me to explain why I do not explore the option of affirming that judgment based on other grounds.
This Court unhesitatingly resorts to the device of affirming a trial court's judgment on an alternative basis if to do otherwise would have us apply an incorrect rule of law to the parties' circumstances. See Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004). Nonetheless, the decision to affirm a trial court's ruling on an alternative basis is discretionary with the appellate court. E.g., Tualatin Valley Builders Supply, Inc. v. TMT Homes of Oregon, Inc., 179 Or.App. 575, 41 P.3d 429 (2002); Frady v. Morrow, 169 Or.App. 250, 255-56, 9 P.3d 141, 144 (2000); and Busch v. Graphic Color Corp., 169 Ill.2d 325, 662 N.E.2d 397, *312 214 Ill.Dec. 831 (1996). I would decline to exercise our discretion to invoke that principle under the circumstances presented by this case. It was necessarily clear to the trial court, obliged as it was to apply the last-exposure rule of Garrett, that the case had to be dismissed because the statute of limitations had expired. Thus, it was not just that the trial court failed to consider other possible bases for entering a summary judgment, it was effectively precluded from doing so.
The defendants principally argue that Cline's evidence failed sufficiently to establish the element of causation required under the Alabama Extended Manufacturer's Liability Doctrine, but the trial court's reliance on the Garrett rule effectively eliminated causation as an issue. That is to say, if a last exposure effects a legally cognizable injury as a matter of law, then one need not prove actual causation. Additionally, Cline's counsel asserts, and submits arguably supportive materials, that he forwent fully developing certain evidentiary aspects once it became evident that the trial judge was going to dispose of the case on the basis of the statute of limitations, and Cline's counsel came to understand that counsel for the defendants was in agreement that the planned appeal would focus solely on that issue.
Presumably because of its determination early on that Garrett clearly would require a dismissal of the claims against the defendants, the trial court did not address certain challenges they made to the admissibility and adequacy of some of Cline's evidentiary submissions. Because the construction of "accrued" in § 6-2-30(a) that I advocate as the proper one would so alter the analytical approach the trial court would have taken had it had the benefit of that rule, I would deem it appropriate to afford the trial court the opportunity to address on the merits the defendants' evidentiary-challenge arguments.

Retroactive Versus Prospective Application of the New Standard Proposed by this Dissent
Although my position was not adopted by the majority of the Court, I nonetheless believe a discussion of the reasons favoring a prospective application of a new accrual rule for toxic-substance-exposure cases is in order.
"`The determination of the retroactive or prospective application of a decision overruling a prior decision is a matter of judicial discretion that must be exercised on a case-by-case basis.' Ex parte Coker, 575 So.2d 43, 51 (Ala.1990), citing City of Birmingham v. Blount County, 533 So.2d 534 (Ala.1988); State Dep't of Revenue v. Morrison Cafeterias Consol., Inc., 487 So.2d 898 (Ala.1985). Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala. 1996) (plurality opinion). `Retroactivity "is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it."' 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991). While reliance upon prior law is an `important variable that must be appraised in every case presenting questions of prospectivity,' we conclude that, as a policy matter, the application of this newly adopted rule to *313 these parties `rewards the prevailing party on the appeal, thereby providing "an incentive for litigants to challenge existing rules of law that are in need of reform."' Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala. 1995), quoting Prospective Application of Judicial Decisions, 33 Ala. L.Rev. 463, 473 (1982)."
Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala.1997).
"Because the rule stated in this opinion would change this Court's construction of the limitations provision of § 6-5-547(a) and reject its previous construction of the statute, a construction [the plaintiff] may have relied on, we would apply this new rule prospectively only, i.e., to legal-malpractice actions filed after the date of this decision. See Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 351-52 (Ala.1997); Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997); McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165-66 (Ala.1996)."
Ex parte Panell, 756 So.2d 862, 869 (Ala. 1999) (plurality opinion of three Justices, but all six remaining Justices concurred in the result, thus joining in the decision for prospective relief only).
"The United States Supreme Court has suggested consideration of the following factors in choosing whether to apply a judicial decision prospectively:
"`First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., [392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968)] ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v. State Board of Elections, [393 U.S. 544, 572, 89 S.Ct. 817, 835, 22 L.Ed.2d 1 (1969)]. Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Linkletter v. Walker, [381 U.S. 618, 629, 85 S.Ct. 1731, 1737-38, 14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity.'"
"Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)[, but see Harper v. Virginia Dep't of Taxation, 509 U.S. 86 (1993)]."
McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156, 165 (Ala.1996).
My view of the proper construction to be accorded the term "accrued" in § 6-2-30(a) in the context of toxic-substance-exposure cases would establish a new principle of law by overruling clear past precedent on which litigants may have relied. This consideration weighs in favor of a prospective application of the principle, as does the purpose of time limitations for filing actions. On the other hand, Cline, as the prevailing party in bringing about a change in the law should be rewarded for his efforts and to deny him the benefit of the new rule would have a chilling effect on litigants who desire to challenge existing rules of law that are in need of reform. Weighing the merits and demerits of the possible options for effectuating the new *314 rule, I would recommend that it be accorded a completely prospective operation, save only for its application in Cline's case, where it would apply retroactively. Therefore, except for Cline, only those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within two years of the opinion adopting the new rule would be entitled to have the accrual of their cause of action determined according to the new rule.
By this approach, there would be no "flood gates of litigation" opened, and only if the legislature chose to refrain from any action for many years would there eventually develop the potential for a significant lag time between last exposure and manifest, present injury. Likewise, this approach would answer the concerns of the specially concurring Justices about the presentation of "stale" claims. Claims could become stale, in the sense of there being a significant temporal separation between cause and effect, only if the legislature is satisfied with the new rule and forgoes for a decade or more any legislative adjustment. (It bears noting, moreover, that under the Garrett rule, a claim is "fresh" only at a time when it is not actionable, and when it finally becomes actionable, upon the occurrence of a manifest, present injury, it is necessarily impermissibly "stale" under the statute of limitations.)
I do not seek to preempt the legislature by having this Court correct the erroneous Garrett rule. I simply take the position that the Court, having created the rule, should assume the responsibility for overruling it and replacing it with a rule that conforms to established principles for determining when a tort cause of action accrues. Thereafter, the Court having corrected its own mistake, I would welcome further legislative action aimed at providing any different rules for accrual, including those incorporating a "discovery" feature, that the legislature might determine to be in order. I therefore would reverse the trial court's judgment and remand this case to the trial court so that it might gauge the accrual of Cline's Alabama Extended Manufacturer's Liability Doctrine cause of action under the new rule, as well as consider the other grounds the defendants asserted in support of their motion for a summary judgment.
NOTES
[1] That act was invalidated on the questionable theory that the 10-year rule of repose was unconstitutional. See Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996 (Ala.1982).
[2] See Senate Bill 534 and Senate Bill 535 (2006 Regular Session); House Bill 659 and House Bill 660 (2005 Regular Session); and House Bill 93 and House Bill 103 (2004 Regular Session).
[3] "The legislature is entrusted with making the public policy of this State, whether or not it is public policy of which this Court would approve. Boles v. Parris, 952 So.2d 364, 367 (Ala.2006) (`[I]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.'); Marsh v. Green, 782 So.2d 223, 231 (Ala.2000) ('Matters of policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts.')." Cline, 970 So.2d at 758 (See, J., concurring specially).
[4] I stated in Cline:

"The public-policy question presented to this Court in this case is one of profound importance, not only to the parties involved, but to countless others as well; however, this Court's jurisdiction and competence are not defined by the importance of the matter presented. See Etowah County Comm'n v. Hayes, 569 So.2d 397, 398 (Ala.1990)('In testing the absolutism of the authority of the legislative branch to appropriate operational funds for the executive branch, the judicial branch of government is constrained not to substitute its judgment for that of the legislature and thus usurp the plenary power of that branch.')."
970 So.2d at 758 (See, J., concurring specially).
[6] "Catch-22: a frustrating situation in which one is trapped by contradictory regulations or conditions." Random House Webster's Unabridged Dictionary (2d ed.2001).